# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| X | |
| ERIC STRAHAN, Individually and on Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | |
| ) | Civil Action No. _____ |
| v. ) ) | |
| CAMBIUM LEARNING GROUP, INC., JOHN CAMPBELL, DAVID F. BAINBRIDGE, WALTER G. BUMPHUS, CLIFFORD K. CHIU, CAROLYN GETRIDGE, THOMAS KALINSKE, JEFFREY T. STEVENSON, JOE WALSH, CAMPUS HOLDING CORP., CAMPUS MERGER SUB INC., and VERITAS CAPITAL FUND MANAGEMENT, L.L.C., ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| ) | **JURY TRIAL DEMAND** |
| Defendants, | |

## CLASS ACTION COMPLAINT

Plaintiff Eric Strahan ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public shareholders of Cambium Learning Group, Inc. ("Cambium" or the "Company") against Cambium's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Veritas Capital Fund

Management, L.L.C. through its affiliate Campus Holding Corp. and its wholly-owned subsidiary Campus Merger Sub Inc. (the "Proposed Transaction").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading information statement to be filed with the Securities and Exchange Commission ("SEC") on November 19, 2018. The Proposed Transaction was first disclosed on October 15, 2018, when Cambium and Veritas Capital announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Veritas Capital will acquire all of the outstanding shares of common stock of Cambium for $14.50 per share (the "Merger Consideration"). The deal is expected to close in the fourth quarter of 2018 or the first quarter of 2019.

3.      Cambium is controlled by Veronis Suhler Stevenson ("VSS"), which holds a majority of the outstanding shares of Cambium through an affiliated entity. VSS is a private equity firm that invests in healthcare, education and business services companies. VSS decided to liquidate its holdings in Cambium, around the same time that VSS sought to liquidate its ownership of VKidz, a private company. After securing a financial advisor and beginning a process to sell the Company, VSS presented the Board with an opportunity to purchase VKidz. By selling VKidz to Cambium and then selling Cambium, VSS was able to liquidate its holdings in both with just one transaction.

4.      Despite the benefits to VSS, the Proposed Transaction is not in the best interests of the minority shareholders. The process by which the Board entered into the Merger Agreement was unfair, as is the Merger Consideration. Yet the minority shareholders were not even considered throughout the sales process. There was no special committee with the authority to hire its own advisors and consider the Proposed Transaction. There is no majority-of-the-minority vote. And

the Proposed Transaction is a foregone conclusion, given that VSS has provided written consent and abrogated the need for a shareholder vote.

5.      Furthermore, the Information Statement is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Information Statement contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Cambium management, as well as the financial analyses conducted by Macquarie Capital (USA) Inc. ("Macquarie"), Cambium's financial advisor. In the absence of this material information the minority shareholders cannot make an informed decision concerning whether or not to exercise their appraisal rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Cambium's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

7.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Cambium.

8.      Defendant Cambium is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 17855 Dallas Parkway, Suite 400, Dallas, Texas 75287. Cambium common stock trades on NASDAQ under the ticker symbol "ABCD." Cambium sells products that focus on supplemental instruction, professional development, and student assessments. The Company has three segments: Learning

A-Z, Voyager Sopris Learning, and ExploreLearning. Learning A-Z products support instruction in reading, writing and science for children in PreK to sixth grade. Voyager Sopris Learning products focus on preparing students for college and career. ExploreLearning focuses on STEM-based educational products.

9.      Defendant John Campbell has been CEO of the Company and a director of the Company since 2013.

10.     Defendant David F. Bainbridge has been a director of the Company since 2012. Defendant Bainbridge is a Managing Director of VSS and is a member of the board of directors for VKidz. As a Managing Director of VSS, Defendant Bainbridge is responsible for sourcing and monitoring the firm's investments.

11.     Defendant Walter G. Bumphus has been a director of the Company since 2011.

12.     Defendant Clifford K. Chiu has been a director of the Company since 2014.

13.     Defendant Carolyn Getridge has been a director of the Company since 2015. Defendant Getridge joined the Board while she served as Senior Vice President, Strategic Partnerships at the Company. She retired from that position in January 2016.

14.     Defendant Thomas Kalinske has been a director of the Company since 2010.

15.     Defendant Jeffrey T. Stevenson has been a director of the Company since 2009. Defendant Stevenson is the Managing Partner of VSS. As Managing Partner, Defendant Stevenson has overall responsibility for management of the firm and its funds.

16.     Defendant Joe Walsh has been a director of the Company since 2013. Defendant Walsh serves as Chairman of the Board and previously served as Executive Chairman.

17.     Defendants Campbell, Bainbridge, Bumphus, Chiu, Getridge, Kalinske, Stevenson and Walsh are collectively referred to herein as the "Board."

4

18.     Defendant Veritas Capital Fund Management, L.L.C. is a private equity firm with headquarters located at 9 West 57th Street, 29th Floor, New York, New York 10019.

19.     Defendant Campus Holding Corp. is a Delaware corporation.

20.     Defendant Campus Merger Sub Inc. is a Delaware corporation and is a wholly owned subsidiary of Campus Holding Corp.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

22.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Cambium maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Cambium common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

25.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of October 12, 2018, Cambium had approximately 47.3 million shares outstanding, of which 14.9 million were not held by VSS.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(iv)     whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)      Plaintiff's claims are typical of those of the other members of the Class.

(e)      Plaintiff has no interests that are adverse to the Class.

(f)      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)      Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)      Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  VSS is the Controlling Shareholder of Cambium

26.      Cambium was formed in 2009 when Voyager Learning merged with Cambium Learning. At that time, VSS owned 100% of Cambium Learning. That merger was structured so that VSS received shares of Cambium common stock, while Voyager Learning shareholders received either shares of Cambium common stock or cash. As a result of that merger, VSS owned 62.4% of the outstanding stock in Cambium. A shareholders agreement between VSS and the Company also gave VSS until December 8, 2011 to opt to purchase up to 7.5 million more shares of Cambium at a 10% discount. VSS exercised that option on August 16, 2011, purchasing 7.2 million shares of Cambium common stock at $2.76 per share.

27.      From the creation of Cambium, the Company conceded that it was controlled by VSS. In its Form 10-K filed with the SEC on March 26, 2010, the Company stated: "[VSS] owns a majority of our outstanding common stock. Accordingly, [VSS] will likely have the ability to

determine the outcome of matters submitted to our shareholders for approval, including the election and removal of directors and any merger, consolidation or sale of all or substantially all our assets. In addition, [VSS] will likely have the ability to control our management, affairs and operations." In that same Form 10-K, the Company noted that pursuant to a shareholders agreement between VSS and the Company, VSS had a contractual right to maintain its percentage ownership of Cambium should the Company decide to issue new shares. Similar statements were made in Forms 10-K filed with the SEC on March 10, 2011, March 15, 2012, March 8, 2013, March 6, 2014, March 17, 2015, March 3, 2016, March 14, 2017 and March 7, 2018.

28.     From the time Cambium was formed until the present, VSS has held a majority of the outstanding shares of Cambium. According to the Schedule 14A Proxy Statement filed with the SEC on April 15, 2010, VSS held 62.4% of Cambiums outstanding stock. VSS owned 62.4% of Cambium's outstanding shares until August 2011, when its ownership increased to 65%. VSS increased its holdings to 67.8% as of March 2013, to 70.9% in December 2013 and to 71.1% as of March 2015. As of October 12, 2018, VSS owned 68.4% of the outstanding stock in Cambium.

**B.  VSS Forces the Board to Buy VKidz and Sell the Company**

29.     As the majority shareholder in Cambium, VSS could not liquidate its holdings without depressing the stock price or paying for expensive offerings. And as the majority shareholder in VKidz, VSS needed a purchaser of the entire company to liquidate its holdings in that company. VSS wanted to liquidate its investment in VKidz after that company had taken on debt of $20.2 million but bookings of only $21.1 million in 2017. Having Cambium purchase VKidz and then agree to a sale of the Company could accomplish both at little expense to VSS.

30.     In January 2018, according to the Information Statement, "certain members of the Board affiliated with [VSS]" began discussing strategic alternatives for Cambium with Macquarie.

Those "certain members of the Board affiliated with [VSS]" met with Macquarie and other VSS representatives four separate times in January and February 2018 to discuss strategic alternatives for Cambium. In March 2018, Cambium's Chief Financial Officer discussed retaining Macquarie to lead a review of strategic alternatives for the Company; Macquarie and Cambium executed an engagement letter at the end of that month. It was not until April 11, 2018 that the Board discussed "present market opportunity" for the Company, and it is not clear that the Board learned of Macquarie's retention at that time. Nor is there any information about the Board discussing and/or agreeing to a review of strategic alternatives for Cambium.

31.    At that same meeting, Defendant Bainbridge brought up the "strategic fit" between Cambium and VKidz, another company owned by VSS, and the "benefits" of that "strategic fit." The president of VKidz was present at that meeting as well and presented the Board with an overview of the VKidz business. Solely on the information provided at the meeting by Defendant Bainbridge and the president of VKidz, the Board opted to create a Special Committee to review a possible transaction between Cambium and VKidz. One month later, on May 10, 2018, the Special Committee approved a purchase agreement to acquire all of the outstanding stock of VKidz.  That purchase agreement included a condition that allowed Cambium to terminate the purchase agreement if acquiring VKidz would interfere with a sale of Cambium.

32.    On May 14, 2018, the Company publicly announced that it had begun a review of strategic alternatives for Cambium that could include a sale of the Company. From there, the process moved quickly. On June 1, 2018, Macquarie began contacting 99 parties to determine interest in a purchase of Cambium. By July 2, 2018, Macquarie solicited first round indications of interest from the 59 parties that had received access to confidential information about Cambium. Revised indications of interest were requested on August 9, 2018 from ten potential buyers selected

by the Board. Those were received on September 6, 2018, and the top three offers were asked to send final bids by October 10, 2018. Two days later, the Board approved the Proposed Transaction.

33.     At each Board meeting from June through October 2018, representatives from VSS were in attendance. When the Board discussed the review of strategic alternatives on June 14, 2018, representatives from VSS (in addition to Defendants Bainbridge and Stevenson) were there. When the Board decided on July 24, 2018 to continue discussions with ten of eleven potential buyers, representatives from VSS (in addition to Defendants Bainbridge and Stevenson were in attendance. On September 10, 2018, when the Board decided to ask the top three bidders to the final round of the process, representatives of VSS were there. Representatives from VSS also attended the Board meeting on October 11, 2018, when the Board determined to obtain the best and final bids from Veritas and Participant 1. VSS initiated the sales process, and was there throughout ostensibly to ensure that its own interests were protected.

34.     While the Board considered a select number of strategic buyers and one of the finalists did not want to include VKidz, the sales process was steered to a transaction that paid cash for Cambium and VKidz. Each and every indication of interest the Company received until October 10, 2018, when one of the top three bids did not include the VKidz acquisition. In fact, it was not until October 1, 2018 that the Company's legal counsel told Macquarie to inform Veritas, Participant 1, and Participant 2 that their bids did not need to include the VKidz acquisition. Ultimately, the Board agreed to the Proposed Transaction, pursuant to which VSS stands to receive an additional $46.5 million from Veritas' purchase of the Cambium shares to be issued in connection with the VKidz acquisition.

**C.  The Board Failed to Protect the Minority Shareholders**

35.     VSS is the controlling shareholder of Cambium and initiated the process leading to

the sale of the Company. VSS also pressured the Board to acquire a VSS-owned company, VKidz. Yet the Board failed to take any measures to protect the minority shareholders during the sale process.

36.     According to the Schedule 14A Proxy Statement filed with the SEC on April 16, 2018, the Board determined that only Defendants Bumphus, Chiu and Kalinske "satisfy the current 'independent director' standards established by rules of The Nasdaq Stock Market LLC." Defendants Campbell, Bainbridge, Getridge, Stevenson and Walsh are not independent because of their ties to the Company or VSS. Defendant Bainbridge is a Managing Director of VSS and is a member of the board of directors for VKidz. As a Managing Director of VSS, Defendant Bainbridge is responsible for sourcing and monitoring the firm's investments. Defendant Stevenson is the Managing Partner of VSS. As Managing Partner, Defendant Stevenson has overall responsibility for management of the firm and its funds. Both Defendants Bainbridge and Stevenson owe fiduciary duties to VSS and to Cambium, and are thus dual-fiduciaries. Defendant Campbell is the current-CEO of the Company, while Defendants Walsh and Getridge were employees of Cambium until recently. And in 2013 Defendant Walsh was granted an interest in the VSS company that holds VSS's shares of Cambium, which entitles him to a portion of the realized return on VSS's investment in Cambium.

37.     When Defendant Bainbridge presented the proposed purchase of VKidz to the Board, the Board elected to create a special committee. That committee was comprised of the only directors considered independent by the Company: Defendants Bumphus, Chiu and Kalinske. No such committee was formed to consider the sale of Cambium. The whole Board, five of the eight members of which are not independent, conducted the sales process leading to the Proposed Transaction. And representatives of VSS (in addition to Defendants Bainbridge and Stevenson)

were present at almost every Board meeting during the sales process. The interests of the minority shareholders were not represented nor protected during the sales process.

38.     The Board also agreed to the Merger Agreement, which includes this language in the preamble: "WHEREAS, it is expected that promptly following, and ***in any event no later than*** 8:30 p.m. local time in New York, New York on the date immediately following the date of execution and delivery of this Agreement (such time, the "Consent Deadline"), the Majority Shareholder will execute and deliver, or cause to be executed and delivered, to the Company and Parent, a true, correct and complete copy of the irrevocable written consent providing for the adoption of this Agreement by the Majority Shareholder, in a form agreed to by Parent (the 'Written Consent'" (emphasis added). Section 5.4 of the Merger Agreement states: "Immediately (but in no event more than 24 hours after the execution and delivery of this Agreement) following the execution and delivery of this Agreement, the Company shall use its commercially reasonable efforts to obtain the Written Consent from the Majority Shareholder and deliver the same to Parent."

39.     The Merger Agreement requires Cambium to obtain VSS's written consent to the Proposed Transaction within 24 hours after entering into the Merger Agreement. This makes the Proposed Transaction a foregone conclusion and prevents the minority shareholders from voicing their approval (or disapproval) via a vote.

40.     Finally, the Information Statement claims that the Company was focused on obtaining the highest value for shareholders. Yet the Merger Consideration does not provide the highest value as indicated by the Company's own financial advisor. For example, Macquarie's *Discounted Cash Flow Analysis* implied a per share equity value as high as $18.96. Macquarie's fairness opinion did not address the acquisition of VKidz, which was touted as having great

benefits for Cambium and would be immediately accretive.

**D.  Cambium's Officers Stand to Receive Benefits Unavailable to the Class**

41.     The Information Statement acknowledges that the Company's executive officers and directors have interests in the merger that may differ from those of the shareholders and may create conflicts of interest. For example, in 2013 Defendant Walsh was granted an interest in the VSS company that holds VSS's shares of Cambium, which entitles him to a portion of the realized return on VSS's investment in Cambium. Upon closing of the Proposed Transaction, Defendant Walsh will earn $11.3 million.

42.     Stock options that have been awarded to and are held by Cambium's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards will create a windfall for Cambium's executive officers and directors that is unavailable to the common shareholders. In total, as demonstrated in the following chart, the executive officers and Board members will obtain more than $479 million:

| | Total Option Consideration | Total Share Consideration | Total Consideration |
|---|---|---|---|
| ***Named Executive Officers*** | | | |
| John Campbell | $5,942,500 | $39,208 | $5,981,708 |
| Barbara Benson | $1,178,756 | – | $1,178,756 |
| Joe Walsh | – | – | – |
| ***Directors*** | | | |
| David F. Bainbridge | – | $468,851,628 | $468,851,628 |
| Walter G. Bumphus | – | $425,691 | $425,691 |
| Clifford K. Chiu | – | $768,500 | $768,500 |
| Carolyn Getridge | $1,320,000 | $20,866 | $1,340,866 |
| Thomas Kalinske | – | $928,435 | $928,435 |
| Jeffrey T. Stevenson | – | $468,851,628 | $468,851,628 |

**E.  The Materially Incomplete and Misleading Information Statement**

43.     The Individual Defendants owe the shareholders a duty of candor. They must

disclose all material information regarding the Proposed Transaction to Cambium shareholders so that they can make a fully informed decision on whether to seek appraisal of their shares.

44.    On November 19, 2018, Defendants filed the Information Statement with the SEC. The purpose of the Information Statement is, inter alia, to provide the Company's shareholders with all material information necessary for them to make an informed decision on whether to seek appraisal of their shares. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Cambium shareholders cannot make a fully informed decision concerning whether to seek appraisal of their shares.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

45.    The Information Statement discloses management-prepared financial projections for the Company which are materially misleading. The Information Statement indicates that in connection with the rendering of Macquarie's fairness opinion, Macquarie reviewed "certain other financial and operating information relating to the Company furnished by the management of the Company, including financial projections prepared by the management of the Company . . ." Accordingly, the Information Statement should have, but failed to, provide certain information in the projections that Cambium's management provided to the Board and Macquarie.

46.    Notably, Defendants failed to disclose the financial projections for fiscal years 2018 to 2022 for: (a) cash taxes; (b) changes in net working capital; (c) stock-based compensation expense; (d) any other individual line items used by Macquarie to calculate cash flow; (e) cash flow, as defined and used by Macquarie; (f) VKidz projections, including revenue, gross profit, EBITDA, D&A, EBIT, cash taxes, changes in net working capital, capital expenditures, stock-based compensation expense, any other individual line items used by Macquarie to calculate cash flow, and cash flow as defined by Macquarie. Specifically, the Information Statement does not

14

disclose whether cash flow projections were prepared by Cambium's  management or Macquarie. This omitted information is necessary for Cambium shareholders to make an informed decision on whether to seek appraisal of their Cambium shares.

### Materially Incomplete and Misleading Disclosures Concerning Macquarie's Financial Analyses

47.     With respect to the *Selected Companies Analysis,* the Information Statement fails to disclose the individually observed multiples for each of the selected companies for EV/LTM Adj. EBITDA, EV/CY 2018E Adj. EBITDA, EV/CY 2019E Adj. EBITDA, and EV/LTM Cash Income. The Information Statement also fails to disclose whether Macquarie performed any type of benchmarking analysis for Cambium in relation to the selected public companies.

48.     With respect to the *Discounted Cash Flow Analysis,* the Information Statement fails to disclose whether Macquarie actually discounted periodic cash flows in its analysis. In addition, the Information Statement does not disclose the definition of "cash flow" as utilized by Macquarie in its analysis. The Information Statement also fails to disclose the individual inputs and assumptions utilized by Macquarie to derive the discount rate range of 7.5% to 9.5%, as well as the range of implied perpetuity growth rates resulting from the analysis. Finally, the Information Statement fails to disclose how Macquarie treated stock-based compensation expense (i.e. as a cash or non-cash expense).

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

49.     The Information Statement also fails to disclose material information concerning the sales process. For example, the Information Statement fails to state whether the confidentiality agreements Cambium entered into with 61 parties are still in effect, how many contain standstill provisions and how many confidentiality agreements presently preclude the signing parties from making a topping bid for the Company. The disclosure of the terms of any standstill provisions is

crucial to Cambium shareholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

50.     The Information Statement does not disclose which members of the Board affiliated with VSS began the preliminary discussions with Macquarie regarding a potential sale of the company. The Information Statement also fails to disclose the identity and number of representatives of VSS and its affiliates that attended meetings with Macquarie on February 7, 2018, February 15, 2018 and February 27, 2018. In addition, the Information Statement does not disclose the number and identity of the VSS representatives who attended the Board meetings on June 14, 2018, 2018, July 24, 2018, September 10, 2018, and October 11, 2018.

51.     Macquarie made a number of presentations to the Board and representatives of VSS over the course of the sales process, yet the Information Statement does not disclose those presentations. This includes the presentation of possible strategic reviews made on January 31, 2018, the preliminary financial analyses with respect to the Company presented on October 11, 2018, and the financial analyses with respect to the Company presented on October 12, 2018. The Information Statement does not disclose whether Macquarie had presented a financial analysis concerning Participant 1's final bid to the Board.

52.     The Information Statement fails to disclose key information concerning the VKidz acquisition, including the specific authority of the special committee formed to review the acquisition, and the advisors to the special committee.

53.     There was no Board meeting between April 11, 2018 and June 1, 2018. The Information Statement does not disclose when the Board first learned of the review of strategic alternatives, who created the list of parties to contact or the basis for contacting significantly more

financial buyers (79) than strategic buyers (20). In addition, the Information Statement does not disclose whether any parties were contacted for a transaction other than purchasing Cambium.

54.     The Company shared internal management projections for Cambium with 59 of the 61 parties who signed a confidentiality agreement with Cambium, as well as projections relating to VKidz. The Information Statement does not disclose the basis for not providing the projections to two of the parties who signed confidentiality agreements with Cambium, or whether the Cambium projections were the same as those disclosed in the Information Statement. The Information Statement also fails to disclose the VKidz projections.

55.     In July, fireside chats were held with 15 potential buyers. Yet the Information Statement fails to disclose the basis for only meeting with 15 potential buyers, how those parties were selected for a fireside chat, and whether Veritas participated in the fireside chats.

56.     The Information Statement fails to disclose the details of each indication of interest received on July 23, 2018 and September 6, 2018.

57.     The Information Statement does not disclose information concerning when the provision requiring the written consent of VSS (in lieu of a shareholder vote) was included in the Merger Agreement. The Information Statement states that Veritas insisted on that provision, but it is not clear whether Veritas suggested it, or if it had been discussed with other parties. Finally, the Information Statement does not disclose whether the Board received legal advice concerning the benefits and negative aspects of obtaining a written consent from VSS instead of holding a shareholder vote.

58.     On September 10, 2018, the Board decided to ask the top three bidders to the final round of the process. The Information Statement does not disclose the definition used to determine what made the bids from Veritas Capital, Participant 1 and Participant 2 the top bids. The

Information Statement also fails to disclose how many representatives from VSS attended the meeting.

59.     The Information Statement includes information concerning services provided to affiliates of Veritas Capital by Macquarie. However, the Information Statement does not disclose whether the Board was aware of these services at any point during the sales process, as well as whether any services were provided to VSS or its affiliates in the two years prior to the execution of the Merger Agreement.

60.     Lowenstein Sandler LLP acted as the Company's legal counsel throughout the sales process and, according to the Information Statement, "provided a presentation to the Board regarding its fiduciary duties with respect to the bid selection process" on October 11, 2018. The Information Statement does not disclose whether, and if so when, the Board retained Lowenstein Sandler as its legal advisor in connection with the sales process, or whether the Board had obtained legal counsel concerning its fiduciary duties prior to October 11, 2018. Furthermore, Section 8.15(a) of the Merger Agreement states that Lowenstein Sandler acted as legal counsel to VSS and "certain of [VSS]'s Affiliates" and "intends to act as legal counsel to [VSS] and its Affiliates" after the Proposed Transaction closes. Yet the Information Statement does not disclose whether the Board was aware of these conflicts and, if so, why it did not retain a different legal advisor.

61.     This information is necessary to provide Company shareholders a complete and accurate picture of the sales process and its fairness. Without this information, shareholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Cambium shareholders are unable to make a fully informed decision concerning appraisal of their shares and face irreparable harm, warranting the injunctive relief sought herein.

62.     In addition, the Individual Defendants knew or recklessly disregarded that the Information Statement omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

63.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Information Statement before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Information Statement omits the material information referenced above and contains the incomplete and misleading information referenced above.

64.     Further, the Information Statement indicates that on October 12, 2018, Macquarie reviewed with the Board its financial analysis of the Merger Consideration delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Cambium shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Macquarie's financial analyses which has been omitted from the Information Statement, and thus knew or should have known that such information has been omitted.

65.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9

66.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67.     Defendants have filed the Information Statement with the SEC to provide Cambium's shareholders with information material to their decision whether to seek appraisal of their shares. Each of the Individual Defendants reviewed and authorized the dissemination of the Information Statement, which fails to provide the material information referenced above.

68.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Cambium, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

69.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

70.     Specifically, and as detailed above, the Information Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Cambium shares and the financial analyses performed by Macquarie in support of its fairness opinion; and (iii) the sales process.

71.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Information Statement is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Information Statement states that Macquarie reviewed and discussed its financial analyses with the Board on October 12, 2018, and further states that the Board relied upon Macquarie's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Information Statement, rendering the sections of the Information Statement identified above to be materially incomplete and misleading.

72.     The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, who will not be able to make an informed decision concerning appraisal if such misrepresentations and omissions are not corrected prior to the closing of the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

73.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of Cambium within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Cambium and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Information Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

75.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Information Statement and other statements alleged by Plaintiff to be misleading prior to the time the Information Statement was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Information Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Information Statement.

77.    In addition, as the Information Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Information Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

78.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

79.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Information Statement;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

D.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 27, 2018                           Respectfully submitted,


                                                   /s/ Joe Kendall
                                                   JOE KENDALL
                                                   Texas Bar No. 11260700
                                                   JAMIE J. MCKEY
                                                   Texas Bar No.  24045262
                                                   **KENDALL LAW GROUP, PLLC**
                                                   3811 Turtle Creek Blvd., Suite 1450
                                                   Dallas, Texas  75219
                                                   214-744-3000 / 214-744-3015 (Facsimile)
                                                   jkendall@kendalllawgroup.com
                                                   jmckey@kendalllawgroup.com


**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514

***Attorneys Plaintiff***